United States District Court
Southern District of Texas
**ENTERED**
November 19, 2015
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BONNIE CEPHUS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civ. A. H-14-696 |
| | § | |
| TEXAS HEALTH AND HUMAN SERVICES | § | |
| COMMISSION, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court in the above referenced cause, removed from state court and alleging retaliation in employment based on Plaintiff Bonnie Cephus' ("Cephus'") complaints of race and gender discrimination in violation of (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, (2) 42 U.S.C. § 1981, and (3) Chapter 21 of the Texas Labor Code,[1] are Defendant Texas Health and Human Services Commission's ("HHSC's") motion for judgment on the pleadings (instrument #13) on Cephus' claims under § 1981 and motion for summary judgment (#14) under Title VII and the TCHRA.

---

[1] Formerly known as, and often still called, the Texas Commission on Human Rights Act ("TCHRA").

The popular name for Chapter 21 of the Texas Labor Code is the Texas Commission on Human Rights Act or TCHRA. Texas abolished the Texas Commission on Human Rights in March 2004 and transferred its duties to the Texas Work Commission. Although the Texas Supreme Court stated it would not use the earlier name for the statute, the popular name is still used by many courts. *Little v. Texas Dept. of Criminal Justice*, 148 S.W. 3d 374, 377-78 (Tex. 2004); *ATI Enterprises, Inc. v. Din*, 413 S.W. 3d 247, 249 n.3 (Tex. App.--Dallas Oct. 23, 2013).

-1-

After careful review of the record and the applicable law, the Court concludes for the reasons stated below that (1) HHSC's motion for judgment on the pleadings should be granted as a matter of law because Plaintiff's claims under 42 U.S.C. § 1981 are barred by Texas' sovereign immunity from liability; (2) HHSC's motion for summary judgment on Plaintiff's Title VII claims should be granted; and (3) Plaintiff's claims under the TCHRA should be dismissed without prejudice because jurisdiction in this Court is barred as a matter of law by sovereign immunity.

## Factual Allegations

Initially Plaintiff also alleged claims for race and gender discrimination, but chose to abandon all but her retaliation claims (#8).

In a bare-bones Second Amended Complaint (#10), Cephus alleges that for years she was a full-time employee with management responsibility at HHSC.  She claims, without providing any dates or details, that she was repeatedly discriminated against in job advancements based on her race, African American, and her gender, female.  After she timely made such complaints internally and to the EEOC, she alleges that she was retaliated against when HHSC denied her an interview for a promotion and, after she retired, when she was denied reinstatement to her previous or to a comparable management position [and was subsequently terminated].

## Standards of Review

*Rules 12(c) and 12(b)(6)*

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990), *citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367, at 509-10 (1990).  The same standard used to review motions under Rule 12(b)(6) applies to motions under Rule 12(c).  *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  The plaintiff's legal conclusions are not entitled to the same assumption. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."), *citing Bell Atlantic Corp. v. Twombly*, 556 U.S. 662, 678 (2007); *Hinojosa v. U.S. Bureau of Prisons*, 506 Fed. Appx. 280, 283 (5th Cir. Jan. 7, 2012).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do . . . ."  *Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955, 1964-65 (2007)(citations omitted).  "Factual
allegations must be enough to raise a right to relief above the
speculative level."  *Id.* at 1965, *citing* 5 C. Wright & A. Miller,
*Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed.
2004)("[T]he pleading must contain something more . . . than . .
. a statement of facts that merely creates a suspicion [of] a
legally cognizable right of action").  "*Twombly* jettisoned the
minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S.
41 . . . (1957)["a complaint should not be dismissed for failure
to state a claim unless it appears beyond doubt that the plaintiff
can prove no set of facts in support of his claim which would
entitle him to relief"], and instead required that a complaint
allege enough facts to state a claim that is plausible on its
face."  *St. Germain v. Howard*,556 F.3d 261, 263 n.2 (5th Cir.
2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191,
205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss,
the plaintiff must plead 'enough facts to state a claim to relief
that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at
1974).  "'A claim has facial plausibility when the pleaded factual
content allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged.'"  *Montoya v.
FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir.
2010), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The
plausibility standard is not akin to a "probability requirement,"
but asks for more than a "possibility that a defendant has acted
unlawfully."  *Twombly*, 550 U.S. at 556.  Dismissal is appropriate

when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

In *Ashcroft v. Iqbal*, 556 U.S. at 679, the Supreme Court stated that "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 129 S. Ct. at 1949. The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

As noted, on a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010), *citing Collins*, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994). *See also United States ex rel. Willard*

-5-

*v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003)("the court may consider . . . matters of which judicial notice may be taken").  Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment.  *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011).  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

**Rule 12(b)(1)**

The court should address Rule 12(b)(1) jurisdictional issues before addressing any attack on the merits of a claim. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)(noting that this requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice).  A court may *sua sponte* raise a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction at any time.  *Westland Oil Development Corp. v. Summit Transp. Co.*, 481 F. Supp. 15 (S.D. Tex. 1979), *aff'd*, 614 F.2d 768 (1980). Fed. Rule of Civil Procedure 12(h)(3) states, "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.".  *See Kidd v. Southwest Airlines Co.*, 891 F.2d 540, 545 (5th Cir. 1990)("[F]ederal courts must address jurisdictional questions *sua sponte* when the parties' briefs do not bring the issue to the court's attention.")(same; *Giannakos v. M/V Bravo Trader*, 762

F.2d 1295, 1297 (5th Cir. 1985)(*per curiam*)(same).  The Court may
find lack of subject matter jurisdiction on any of the following
three bases:  (1) the complaint; (2) the complaint along with
undisputed facts evidenced in the record; and (3) the complaint
along with undisputed facts and the court's resolution of disputed
facts.  *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th
Cir. 1996). If the Court finds that Eleventh Amendment immunity
applies, the barred claims "can be dismissed only under Rule
12(b)(1) and not with prejudice." *Warnock v. Pecos County, Tex.*,
88 F.3d 341, 342-43 (5th Cir. 1996).  *See, e.g., Stokes v. Scott*,
No. CIV. A. 398CV1140L, 2000 WL 343185, at *1 (N.D. Tex. Mar. 31,
2000)(dismissing claim for lack of subject matter jurisdiction
under Rule 12(b)(1) as barred by the Eleventh Amendment in the
absence of waiver, regardless of relief sought), *citing Pennhurst
State School and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  The
Court's dismissal of a case for lack of subject matter
jurisdiction is not a judgment on the merits and does not preclude
the plaintiff from pursuing his claim in a court that properly has
jurisdiction.  *Hitt*, 561 F.2d at 608; *Ramming v. U.S.*, 281 F.3d
158, 161 (5th Cir. 2001), *cert. denied sub nom. Cloud v. U.S.*, 536
U.S. 960 (2002).

**Rule 56(c)**

        Summary judgment under Federal Rule of Civil Procedure
56(c) is appropriate when, viewing the evidence in the light most
favorable to the nonmovant, the court determines that "the
pleadings, depositions, answers to interrogatories and admissions
on file, together with the affidavits, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the nonmovant bears the burden of proof at trial, the movant must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the nonmovant's claim; the movant may, but does not have to, negate the elements of the nonmovant's case to prevail on summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).  "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial."  *Celotex*, 477 U.S. at 323. The nonmovant may not rely merely on allegations, denials in a

pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc,*, 144 F.3d 377, 380 (5th Cir. 1998).

Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48 (1986). "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id., quoting Liberty Lobby*, 477 U.S. at 252. The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id.*, *quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S. at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.

1996)("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.,* 14 F.3d 1056, 1060 (5th Cir. 1995)(for the party opposing the motion for summary judgment, "only evidence--not argument, not facts in the complaint--will satisfy' the burden."), *citing Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991).   The nonmovant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial."  *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001), *citing Celotex*, 477 U.S. at 324.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.   The Court may not make credibility determinations.  *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009), *citing Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007).

### HHSC's Motion for Judgment on the Pleadings (#13)

The parties do not dispute that HHSC is an agency of the State of Texas.  *See Janek v. Harlingen Family Dentistry, P.C.*, 451 S.W. 3d 97, 99 (Tex. App.--Austin 2014), *citing* Tex. Gov't Code § 531.021(a)("HHSC is the state agency designated to administer the Texas Medicaid Program.").   In Texas the State and its agencies are immune from suit and liability unless the Legislature expressly waives sovereign immunity. *State v. Lueck*,

290 S.W. 3d 876, 880 (Tex. 2009); *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W. 3d 384, 388 (Tex. 2011). Thus HHSC, as a state agency, is entitled to the protections of sovereign immunity. *Harris County v. Sykes*, 136 S.W. 3d 635, 638 (Tex. 2004)("Sovereign immunity from suit defeats a trial court's subject matter jurisdiction unless the state expressly consents to suit."), *citing Texas Dept. of Transp. v. Jones*, 8 S.W. 3d 636, 638 (Tex. 1999).

Sovereign immunity contains two distinct principles, immunity from liability and immunity from suit. *Tex. Parks & Wildlife Dep't v. Miranda*, 133 S.W. 3d 217, 224 (Tex. 2004). Immunity from liability is an affirmative defense that bars enforcement of a judgment against a governmental entity. *Tooke v. City of Mexia*, 197 S.W. 3d 325, 332 (Tex. 2006). In contrast, immunity from suit bars an action against the state unless the state expressly consents to the suit. *Tooke*, 197 S.W. 3d at 331; *Jones*, 8 S.W. 3d at 638.

HHSC seeks dismissal with prejudice of Cephus's claims under 42 U.S.C. § 1981 because despite HHSC's removal of this action from state court to federal court, HHSC has immunity from liability based on Texas sovereign immunity.[2] The Supreme Court

---

[2]  There are three exceptions to Eleventh Amendment immunity:  (1) valid abrogation by Congress; (2) clearly stated waiver or consent to suit by the state; or (3) the state's amenity to suit under the *Ex Parte Young* doctrine. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 14, 55 (1996); *Jagnandan v. Giles*, 538 F.2d 1166 (5th Cir. 1976), *cert. denied*, 432 U.S. 910 (1977); and *Edelman v. Jordan*, 415 U.S. 651 (1974).

Congress has abrogated sovereign immunity under the Fourteenth Amendment for Title VII claims by citizens of a state against their own or another state for damages in federal court.

in *Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613 (2002), held that when a state defendant removes an action to federal court, it waives its *jurisdictional* immunity from suit in federal court under the Eleventh Amendment. In *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 255 (5th Cir. 2005), *rehearing denied en banc*, 454 F.3d 503 (5th Cir. 2006), *cert. denied*, 550 U.S. 917 (2007), the Fifth Circuit clarified that a state defendant may continue to assert immunity from liability on state-law grounds even after removal to federal court:

> [W]e conclude that the Constitution permits and protects a state's right to relinquish immunity from suit while retaining its immunity from liability, or vice versa, but that it does not require a state to do so.
>
> In sum, under the principles of federal law we have discussed, when Texas removed this case to federal court it voluntarily invoked the jurisdiction of the federal courts and waived its immunity from suit in federal court. Whether Texas has retained a separate immunity from liability is an issue that must be decided according to that state's law.[3]

---

*Fitzpatrick v, Bitzer*, 427 U.S. 445, 453, 457 (1976); *Seminole Tribe v. Fla.*, 517 U.S. 44, 55 (1996); *Khan v. Southern Univ. & Agric. & Mechanical College Board of Supervisors*, No. 03-30169, 2005 WL 1994301, at *2 & n.7 (5th Cir. Aug. 19, 2005).

Section 1981 does not contain a congressional waiver of the state's Eleventh Amendment immunity. *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981). Nor ode *Ex parte Young* apply here, where no officer to the state is being sued.

[3] In denying the motion for rehearing in *Meyers*, 404 F.3d at 504, the Fifth Circuit made clear in even broader terms,

> The narrow holding in the instant case is that, under the Supreme Court's decision in *Lapides v. Bd. of Regents of Georgia*, 535 U.S. 613 (2002), when a State removes to

-12-

Thus, urges HHSC, the Court should dismiss Cephus' section 1981 claims based on HHSC's sovereign immunity as defined by state law. HHSC has expressly pleaded sovereign immunity as an affirmative defense, and under *Meyers* it may continue to plead immunity from liability on state-law grounds.[4]

In her response (#18) Cephus merely reiterates her allegations and conclusorily argues that after HHSC engaged in extensive discovery, it would be "unconscionable to permit defendant to abuse the discovery process . . . and then assert an immunity defense after the discovery cut-off date.  Defendant has either waived or should be estopped to assert its immunity defense by its extensive litigation after removing to federal court and invoking the jurisdiction of the federal court."  *Id.* at p. 4.

federal court a private state court suit based on a federal-law claim, it invokes federal jurisdiction and thus waives its unqualified right to object peremptorily to the federal district court's jurisdiction on the ground of state sovereign immunity. However, that waiver does not affect or limit the State's ability to assert whatever rights, immunities or defenses are provided for by its own sovereign immunity to defeat the claims against the State finally and on their merits in the federal courts.  In sum, Texas may assert its state sovereign immunity as defined by its own law as a defense against the Plaintiff's claims in the federal courts, but it may not use it to defeat federal jurisdiction or as a return ticket back to the state court system.

[4] Under Texas law, the affirmative defense to sovereign immunity to liability must be pleaded or it is waived.  *Jones*, 8 S.W. 3d a 638.

-13-

The Eleventh Amendment operates like a jurisdictional bar, depriving federal courts of the power to adjudicate suits against a state." *Union Pac. R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011). Because HHSC has shown as a matter of law that it retains its sovereign immunity on liability against Cephus' section 1981 claims, the Court concludes that its motion for judgment on the pleadings should be granted.

### Cephus' TCHRA Claims

HHSC does not address the sovereign immunity issue for claims under the Texas Labor Code, but seeks summary judgment on the merits on its retaliation claim under the Texas Labor Code and Title VII. Because sovereign immunity deprives a court of jurisdiction, it may be raised at any time by any party or by the court *sua sponte*. *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011)('[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."); *Johnston v. U.S.*, 85 F.3d 217, 218 n.2 (5th Cir. 1996)("It is well-settled that subject matter jurisdiction can be raised at any time or even *sua sponte* by the court."). The Court does so here as to Cephus' TCHRA claims against HHSC.

The TCHRA, Texas Labor Code § 211.051 ("Discrimination by Employer") prohibits employers from discriminating based on race, color, disability, religion, sex, national origin, or age. It clearly and unambiguously waives governmental immunity for governmental entities that are "employers," defined in § 21.002(8)

as including "a county, municipality, state agency, or state instrumentality, regardless of the number of individual employed." *See, e.g., Dallas/Fort Worth International Airport Board v. Funderburk*, 188 S.W. 3d 233, 235-36 (Tex. App.--Fort Worth 2006)(review granted and remanded by agreement), *citing inter alia Tex. Dep't of Crim. Justice v. Cooke*, 149 S.W. 3d 700, 704 (Tex. App.-Austin 2004, no pet.)(stating that the TCHRA "provides a limited waiver of sovereign immunity when a governmental unit has committed employment discrimination on the basis of race, color, disability, religion, sex, national origin, or age."); *King v. Tex. Dep't of Human Servs. ex rel. Bost*, 28 S.W. 3d 27, 30 (Tex. App.--Austin 2000, no pet.)(recognizing that the TCHRA "contains such a waiver [of sovereign immunity] by including state agencies in the Act's definition of 'employer.'").  The allegation here by Cephus is that her employer, HHSC, after discriminating against her based on race and gender in denying her promotions during her many years as an employee, retaliated against her for filing an age discrimination suit when HHSC failed to give her interviews for promotions and, after her retirement, in failing to reinstate her to a supervisory position comparable to the one she had held, and ultimately in terminating her.

Nevertheless, and key here, while the Texas Labor Code waives sovereign immunity for claims under the Labor Code in state court, it does not waive immunity in federal court.  *Perez v. Region 20 Educ. Service Center*, 307 F.3d 318, 332 (5th Cir. 2002); *Hernandez v. Texas Department of Human Services* , 91 Fed. Appx. 934, 935, No. 03-51227, 2004 WL 377510 (5th Cir. Mar. 2, 2004)(per

curiam).  *See also Swanson v. Railroad Com'n of Texas*, Civ. A. No. C-11-80, 2011 WL 2039601, at *4 (S.D. Tex. May 24, 2011).

Moreover, even if Cephus were to argue that this Court had federal question jurisdiction over Title VII claims and therefore could have supplemental jurisdiction over the TCHRA claims, the Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court.  *Hernandez*, 91 Fed. Appx. at 935, *citing Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984).  "The supplemental jurisdiction statute, 28 U.S.C. § 1367 (West 2004), which codified pendent jurisdiction, does not abrogate Eleventh Amendment immunity.  *Id., citing Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 541-42 (2002).

Therefore this Court lacks jurisdiction over Cephus' TCHRA claims against her employer, HHSC, and accordingly dismisses them without prejudice.  *Id.  In accord, Taylor v. Texas Southern Univ.*, 4:12-CV-01975, 2013 WL 3157529, at *5 (S.D. Tex. June 20, 2013)(claims under the TCHRA against a state agency in federal court are barred by the Eleventh Amendment).

### HHSC's Motion for Summary Judgment (#14)

*Relevant Law*

To assert a claim of retaliation under Title VII, a plaintiff with only circumstantial evidence must satisfy the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  First the plaintiff must make a *prima facie* case of retaliation that meets three elements:  (1) the employee engaged in an activity that is protected by Title

VII; (2) the employer took an adverse employment action against the employee; and (3) there is a causal connection between the protected activity and the adverse employment action. *Brazoria County, Tex. v. EEOC*, 391 F.3d 685, 692 (5th Cir. 2004), *cited for that proposition in Cooper v. Dallas Police Assoc.*, 278 Fed. Appx. 318, 320 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 1912 (2009). *See also McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

The statute defines "protected activity" as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding or hearing under Title VII. 42 U.S.C. § 2000e-3(a)(the "opposition clause"). Filing of a lawsuit by the employee against the employer also can constitute a "protected activity" under Title VII. *See, e.g., Everett v. Central Mississippi, Inc. Head Start Program*, 444 Fed. Appx. 38, 41 (5th Cir. Oct. 5, 2011). Section 2000e-3(a)(the "participation clause") prohibits retaliation for the making of a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under the statute. *Glorioso v. Mississippi Dept. of Corrections*, 193 F.3d 517, No. 99-60147, 1999 WL 706173, at *3 (5th Cir. Aug. 20, 1999), *citing Grimes v. Texas Department of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996). The complainant employee using the opposition clause must "'show that she had a reasonable belief that the employer was engaged in unlawful employment practices.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 348 (5th

Cir. 2007), *quoting Byers v. Dallas Morning News*, 209 F.3d 419, 428 (5th Cir. 2000).

An "adverse employment action," for the second prong, in a retaliation claim only, is not limited to the Fifth Circuit's previous "ultimate employment decision" standard for discrimination claims under the statute.  The Supreme Court has held that "the standard for retaliation is broader than for discrimination" in that such actions are not limited to tangible employment actions.  For purposes of a retaliation claim, an adverse employment action is one that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 68 (2006).[5] *See also McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007)(same)(*quoting*

---

[5] As the Fifth Circuit explained in *Bouvier*, 2009 WL 3444765, at *3 n.2,

> The Supreme Court has held that Title VII's anti-retaliation provisions prohibit more conduct than its anti-discrimination provisions.  *See Burlington Northern*[, 548 U.S. 53].  Expressly limiting its holding to retaliation claims, the Supreme Court abrogated the "ultimate employment [decision] test" and held that employees must show that a reasonable employee would have found the challenged action materially adverse.  *Id.* at 67.  However, in the Fifth Circuit the "ultimate employment test" still applies to cases alleging discrimination.  *See McCoy [v. City of Shreveport*, 492 F.3d 551, 559-60 (5th Cir.  2007)]  ("In *Burlington Northern*, the Court expressly limited its holding to Title VII *retaliation* claims . . . .")(emphasis in the original).

*Burlington N.*, 548 U.S. at 68).  "The purpose of this objective standard is 'to separate significant from trivial harms' and 'filter out complaints attacking the ordinary tribulations of the workplace, such as sporadic use of abusive language, gender-related jokes, and occasional teasing.'"  *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009)*, citing Burlington N.*, 548 U.S. at 68.

"[T]o establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity."  *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003).  Unlike the mixed motive causation analysis permissible for other Title VII claims, "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  *Univ. v. Texas Southwest Med. Center v. Nassar*, ____ U.S. ___, 133 S. Ct. 2517, 2533 (2013).  *In accord, Zamora v. City of Houston*, __ F.3d ___, No. 14-20125, 2015 WL 4939633, at *3 (5th Cir. Aug. 19, 2015); *Finnie v. Lee County, Miss.*, 541 Fed. Appx. 368, 371-72 (5th Cir. Sept. 12, 2013).

If the Cephus succeeds in establishing a *prima facie* case of Title VII retaliation, the burden shifts to HHSC to state a legitimate, nonretaliatory reason for its decision.  *Devere v. Forfeiture Support Associates, LLC*, ____ Fed. Appx. ___, 2015 WL 3440307, at *2 (5th Cir. May 29, 2015).  If HHSC does so, the burden shifts back to Cephus to raise a genuine issue of material

fact that the employer's proffered reason is a mere pretext for retaliation. *Medlock v. Ace Cash Exp., Inc.*, 589 Fed. Appx. 707, 710 (Oct. 29, 2014). A deficient investigation does not prove pretext of retaliation because "[m]anagement does not have to make proper decisions, only non-discriminatory ones." *Medlock*, 589 Fed. Appx. at 710, *citing Bryant v. Compass Grp. USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005).

The anti-retaliation provision of Title VII does not protect an employee from all retaliation, but only from retaliation that produces an injury or harm. *Burlington Northern*, 548 U.S. at 67.

The Fifth Circuit has held that temporal proximity between the protected activity and the alleged adverse employment action, by itself, is insufficient to create a genuine issue of material fact for the element of causation. *Kopszywa v. Home Depot USA, Inc.*, ____ Fed. Appx. ____, No. 14-60745, 2015 WL 4737367, at *4 (5th Cir. Aug. 11, 2015)("As a matter of law, "'[b]ut-for' causation . . . cannot be established by temporal proximity alone.' Temporal proximity may only create a genuine dispute of material fact on the issue of but-for causation if the employee also introduces other probative evidence of pretext. [citations omitted]"); *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 Fed. Appx. 437, 443 (5th Cir. 2007)(collecting cases on temporal proximity). *See also Mayberry v. Vought Aircraft Co.,* 55 F.3d at 1092 (Close timing may be a significant factor, but not necessarily determinative of the relation between the protected activity and the adverse action.); *McCoy*, 492 F.3d 562 (although

temporal proximity between the protected activity and an adverse employment action may be enough of a "causal connection" to establish a *prima facie* case, "once an employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive."). Temporal proximity should be weighed by the court "as part of the 'entire calculation of whether [the employee] had shown a causal connection between the protected activity' and the adverse employment action." *Hague v. Univ. of Texas Health Science Center*, 560 Fed. Appx. 328, 334 n.7 (5th Cir. Mar. 28, 2014), *quoting Shirley v. Chrysler First, Inc.* 970 F.2d 39, 44 (5th Cir. 1992). Noting that "the existence of a causal link between a protected activity and an adverse employment action is a 'highly fact specific' and difficult question," the Fifth Circuit has identified factors supporting causation including "(1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination." *Smith v. Xerox Corp.*, 371 Fed. Appx. 514, 520 (5th Cir. Mar. 24, 2010) Some cases have held that where only temporal proximity exists, to be adequate evidence of causality for a *prima facie* case, it must be very close. *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *Strong v. University Healthcare System, LLC*, 482 F.3d 802, 808 (5th Cir. 2007).

"Employers need not suspend previously planned [employment actions] upon discovering that a Title VII suit [or EEOC charge] has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence of causality." *Clark County School Dist. v. Breeden*, 532 U.S. at 272; *Smith v. Xerox*, 371 Fed. Appx. at 519.

If the plaintiff succeeds in making a *prima facie* case of retaliation, a presumption of discrimination arises, and the burden shifts to the defendant employer, to provide a legitimate, nonretaliatory reason for the adverse employment action. *Hockman v. Westward Communications LLC*, 407 F.3d 317, 330 (5th Cir. 2004), *cited for that proposition in Cooper*, 278 Fed. Appx. at 320. If the employer succeeds, under the *McDonnell Douglas* framework the presumption of discrimination falls away and the plaintiff must show that the employer's articulated reason for its action is merely a pretext for retaliation. *Cooper*, 278 Fed. Appx. at 320, *citing McDonnell Douglas*, 411 U.S. at 804. The plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer. *McCoy*, 492 F.3d at 557. The plaintiff can show pretext "by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003), *quoting Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. at 143. For example, a plaintiff could show that she is clearly better qualified than the person who got the job, promotion, raise, etc.,[6] or demonstrate that the

---

[6] "However, the bar is set high for this kind of evidence because differences in qualification are generally not

employer's articulated reason is false by showing inconsistency in the employer's explanations at different times. *Burrell*, 482 F.3d at 412, *citing Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 356-57 (5th Cir. 2001), and *Gee v. Principi*, 289 F.3d 342, 347-48 (5th Cir. 2002)("a factfinder may infer the ultimate fact of retaliation by the falsity of the explanation"). "[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," and thereby preclude summary judgment. *Reeves*, 530 U.S. at 135.

### Factual Background

Supported by summary judgment evidence, HHSC provides a far more detailed summary of Cephus' employment at HHSC than the second amended complaint and answer or briefing relating to the motion for judgment on the pleadings. #14 at pp. 3-5.

Cephus commenced working for HHSC in December 1973 and retired, allegedly only because she was eligible to do so, on or about September 30, 2010, when she held the position of a Medical Eligibility Supervisor III. Exh. A, Cephus Dep. at 10:8-9, 13:6-8, 12-18. A month later she reapplied to HHSC for another supervisory position. *Id.* at 15:19-25. Subsequently after she

---

probative evidence of discrimination unless those disparities are 'of such a weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Celestine*, 266 F.3d at 357, *quoting Deines v. Texas Dept. of Protective and Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999).

was denied interviews for various applications that she made for supervisory positions at HHSC, she sued HHSC for age discrimination relating to HHSC's failure to hire her.  Exh. D. She did not perfect service of that suit, however, until July 25, 2012, a day after the lawsuit was dismissed by her attorney,[7] and concedes that she did not tell anyone at HHSC about the lawsuit. Exhs. E and F; Exh. A at 44:10-12.

In January 2012 Cephus applied for an entry-level job as a Medical Eligibility Specialist I.  Exh. A at 22:1-14.  She was interviewed by Janet Ikpeme ("Ikpeme"), Program Manager, who decided that Cephus was the best qualified applicant and gave her the job.  Ikpeme Decl., Ex. B at ¶ 3.  Rehired on March 19, 2012, Cephus started as an Eligibility Specialist, but a day later applied for another supervisor job.  Ex. B at ¶ 4; Ex. A at 26:15-18.  Ikpeme told Cephus that she lacked the minimum qualifications for that position, i.e., Current Texas Integrated Eligibility Redesign ("TIERS") experience, and Ipkeme denied Cephus an interview for it.  Exh. B at ¶ 4; Exh. A at 28:15-18.  A week later Cephus filed an internal employment discrimination complaint alleging in part that Ikpeme's refusal to interview her was based on her race, sex and age.  Fortress Decl., HHSC Memo, Exh. C-2.

On June 26, 2012 Cephus was transferred to work under Karen Mayfield ("Mayfield"), Social Service Supervisor, the position for which Cephus had previously applied, but was not interviewed.  Exh. B at ¶ 7.  Cephus sent a email to Ikpeme

---

[7] #14-1, Ex. A, Cephus Dep., 44:7-12, 19-23.

asserting that in 2009, when Mayfield worked under Cephus, Mayfield had falsified her casework and committed fraud against HHSC. Exh. B at ¶ 7. Cindy Fortress then investigated the allegation, but found no evidence of fraud or falsification of casework by Mayfield. Fortress Decl., Exh. C at ¶ 4(c). Cephus testified that she had orally reported the alleged fraud to the Program Manager, Diane Hall, according to agency policy, but HHSC had no record of such a report. *Id.* Fortress inferred that Cephus had made the allegations up because she was disgruntled about not being hired for the supervisor position. Id.

Although provided with numerous training sessions on the TIERS system, which had not been used during Cephus' prior employment with HHSC, Cephus still had problems mastering it. Exh. C at ¶ 4(a). She asked for and received one-on-one training, but still was unable to complete tasks assigned by her instructor. *Id.* Moreover, she continually failed to follow and/or respond to instructions from her supervisors and other managers, including to clarify timely the entries that she made regarding overtime hours and leave taken in the agency's on-line timekeeping system, AccessHR. Exh. C at ¶ 4(d). HHSC claimed that Cephus also improperly used travel monies while participating in Basic Skills Training in Austin, several times purchasing two or more meals on her state-issued credit card when the guidelines instructed that it be used to purchase meals for the employee only. Exh. C at ¶ 4(c); Exh. B at ¶ 6.

After HHSC determined that Cephus was not suited for her job as Medical Eligibility Specialist I, Cindy Fortress terminated

Cephus on August 7, 2012 during her probationary period, as
permitted by HHSC policy, based on her unsupported allegations of
fraud against Mayfield, poor performance during her training,
improper use of travel funds, and failure to follow instructions.
Ex. C at ¶ 4(a-d). HHSC claims that neither Ikpeme nor Fortress,
the decision-makers in this suit, knew about Cephus' earlier
lawsuit until after her termination. Ex. B at ¶ 5, Exh. C at ¶ 6.

Cephus then filed the instant suit, complaining that
HHSC failed to interview her for the supervisory position in
retaliation for her previous age discrimination lawsuit and that
it had terminated her in retaliation for her earlier internal
employment discrimination complaints. Ex. G.

**HHSC's Motion for Summary Judgment on Retaliation Claim under
Title VII**

Insisting that Cephus cannot present any evidence that
she was retaliated against, HHSC seeks summary judgment based on
two arguments: Cephus has failed to establish a *prima facie* case
of retaliation because (1) she cannot demonstrate that the
requisite causal, "but-for" nexus between her alleged protected
activities and adverse employment actions, the third prong of her
*prima facie* case; and (2) even if she could, Cephus cannot show
that HHSC's articulated, legitimate, non-retaliatory reasons for
its actions were merely pretext to hide retaliation.

A "causal link" may be shown by evidence that "the
employer's decision to terminate was based in part on knowledge of
the employee's protected activity." *Medina v. Ramsey* Steel Co.,
238 F.3d 674, 684 (5th Cir. 2001). "If an employer is unaware of

an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." *Chaney v. New Orleans Public Facility Management, Inc.*, 179 F.3d 164, 168 (5th Cir. 1999).

Regarding Cephus' first claim, HHSC's failure to interview Cephus for the Social Service Supervisor job because she had filed a previous age discrimination suit against HHSC, HHSC argues that Cephus cannot show that anyone at HHSC had knowledge of her previous lawsuit at the time that she was not interviewed for the position. Cephus filed her age discrimination suit in November of 2011, but did not perfect service until July 25, 2012, several months after she was rehired by HHSC. Exh. E. Cephus, herself, testified that she did not know if anyone at HHSC knew about her first suit. Exh. A at 44:10-12 . She also stated that she had not told anyone that she filed the suit, nor did she provide anyone at HHSC with a copy of it. Exh. A at 44:10-12 and 45:24-46:1.

Decision-maker Ikpeme also testified that she did not know of any lawsuit filed by Cephus against HHSC until the instant suit was filed. Ex. B, Ikpeme Decl. at ¶ 5.

At her deposition for this case Cephus further testified that she was not sure who allegedly retaliated against her. Exh. A at 27:14-28:7. Where evidence of causation is missing, the court should grant summary judgment. *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 484 (5th Cir. 2002). Here there is no evidence of causation on Cephus' claim that she was not selected for the

supervisory position because she filed an age discrimination suit in November 2011.

Regarding the causal nexus between her termination and her internal complaint of employment discrimination, the only evidence put forth by Cephus is the temporal proximity between the two:  Ikpeme and Fortress learned of Cephus' internal complaint on May 17, 2012, and Cephus was terminated on August 7, 2012, almost three months later.  Temporal proximity alone is insufficient to establish evidence of causality unless it is "very close."  *Clark County School Dist. v. Breeden*, 532 U.S. 268. 273-74 (2001), *citing inter alia Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997)(3-month period insufficient); *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 802 (5th Cir. 2007)(three and one-half months insufficient to show causation); *Winchester v. Galveston Yacht Basin*, 943 F. Supp. 776, 781 (S.D. Tex. 1996)("It is undisputed that she was discharged a few weeks after angrily complaining about her not receiving a raise, but the Court finds this proximity in time to be insufficient evidence to establish a causal connection."), *aff'd*, 119 F.3d 1 (5th Cir. 1997)(unpublished); *Myers v. Crestone Int'l, LLC*, 121 Fed. Appx. 25, 28 (5th Cir. Jan. 14, 2005)(*per curiam*)(approximate three-month gap did not, by itself, create a causal link).

Nor can Cephus demonstrate that HHSC's proffered reasons for terminating Cephus, supported by testimony from Ikpeme and Fortress, are merely pretext for intentional retaliation.  Cephus must show that her protected activity was the "but-for cause of the alleged adverse action taken by the employer.  *Univ. of Texas*

*Southwest Medical Center*, 133 S. Ct. at 2533.  Cephus cannot show
that she would not have been terminated but for her internal
employment discrimination complaint.  When asked if she thought
her allegations of fraud against Mayfield or the problem with her
travel receipts could have been one of the reasons she was
terminated, she testified, "Yes." Exh. A at 70:3-10.  She
conceded that she was told that she would not receive an interview
because she lacked the required TIERS training.  Exh. A at 28:15-
18.  She also testified that she did not know whether Mayfield had
TIERS training or whether Mayfield was more qualified than she was
for the job.  Exh. A at 46:15-22.  In sum, HHSC charges that
Cephus has only her subjective belief about how she perceived her
treatment by HHSC, but no competent summary judgment to
demonstrate that she was terminated because she opposed alleged
discriminatory practices at HHSC.

The issue here is not whether HHSC made an erroneous
decision, but whether that decision was made with a retaliatory
motive.  *Mayberry v. Vought Aircraft*, 55 F.3d 1086, 1091 (5th Cir.
1995).  "While the matter could have been handled differently, it
is not the court's place to second-guess management's business
decisions or to serve as a self-appointed, corporate personnel
manager." *Patton v. United Parcel Serv., Inc.*, 910 F. Supp. 1250,
1267 (S.D. Tex. 1995), *citing Waggoner v. City of Garland, Texas*,
987 F.2d 1160, 1165 (5th Cir. 1993).

In response (#19), Cephus, in conclusory statements
without supporting competent summary judgment evidence,
essentially reiterates her belief that she was retaliated against

after asserting federally protected claims that she was discriminated against on the basis of her race and gender by HHSC's employment practices and policies.  She does not address the specific grounds set forth by HHSC as justifying summary judgment in its favor on her retaliation claims.

The evidence she does put forth is that created by Cephus, herself, conclusorily asserting her beliefs:  her internal complaints of discrimination and HHCS' acknowledgment of their receipt, an April 19, 2012 email updating her complaint based on a conversation with Fortress about her "returning to work as a retiree, TIERS training, and the Supervisor's position" that she had applied for, and that she would not be given an interview, her EEOC charge of discrimination and an acknowledgment of its receipt, her dismissal letter from HHSC and various other communications that do not support the elements of her retaliation claim.  She also filed her own affidavit (#20), again filled with legal conclusions, although she also complains that HHSC now asserts that after she retired, she kept confidential healthcare documents, which Cephus claims were not confidential and were used by her in her duties as a supervisor in compliance with company policy.

The Court emphasizes that Federal Rule of Civil Procedure 56(c)(4) provides, "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on matters stated." "[U]ltimate or conclusory facts and conclusions of law, as well as

statements made on belief or 'on information and belief, cannot be utilized on a summary judgment motion. Similarly, the mere reargument of a party's case or the denial of an opponent's allegations will be disregarded . . . .'" Wright and Miller, *supra*, § 2738. "'[W]ithout more, a vague or conclusory affidavit is insufficient to create a genuine [dispute] of material fact in the face of conflicting evidence.'" *McWhirter v. AAA Life Ins. Co.*, ___ Fed. Appx. ___, 2015 WL 4720323, at *2 (5th Cir. Aug. 10, 2015), *quoting Kariuki v. Taranto*, 709 F.3d 495, 505 (5th Cir. 2013), in turn *citing Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482 (5th Cir. 2002)(collecting citations). "'[U]nsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment.'" *Serna v. Law Office of Joseph Onwuteaka, PC*, ___ Fed. Appx. ___, 2015 WL 3526977, at *5 (June 5, 2015), *quoting Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985). Thus the Court finds that Cephus' affidavit is not competent summary judgment.

In a reply (#21) to Cephus' response, HHSC reiterates that Cephus has failed to submit any evidence showing there was a minimal causal link between any protected activity and any job for which she was not hired. Moreover, HHSC maintains that it has met its burden to articulate legitimate, nonretaliatory reasons for Cephus' termination, in addition to its decision not to interview her for a supervisor position. All she presents is a subjective belief that she suffered retaliation.

The Court agrees with HHSC that Plaintiff has failed to meet her burden on summary judgment because she has no competent summary judgment establishing key elements of her retaliation claim under Title VII.  She fails to make a *prima facie* case of retaliation because she fails to show that "but for" her complaints of discrimination or her lawsuit she would not have been terminated.  Nor has she demonstrated that her supervisors at HHSC, or anyone there, had knowledge of her age discrimination suit when interviews for jobs were denied to her or when she was terminated.  She also fails to show that HHSC's nondiscriminatory reasons for firing her are pretextual, no less that retaliation was the actual motive for the denial of interviews in her applications for supervisory positions or her termination.

**ORDER**

Accordingly for the reasons stated above, the Court

ORDERS that HHSC's motion for judgment on the pleadings to dismiss Cephus' § 1981 claims is GRANTED with prejudice.  The Court further

ORDERS  that HHSC's motion for summary judgment is GRANTED as to Cephus' claims under Title VII.  Finally, the Court

ORDERS that Cephus' claims under the TCHRA against her employer HHSC are dismissed without prejudice under Rules 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction because Texas has not waived sovereign immunity for HHSC in federal court.

Final judgment will issue by separate instrument.

**SIGNED** at Houston, Texas, this  19th  day of  November, 2015.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE